## IN THE CIRCUIT COURT FOR
## WICOMICO COUNTY, MARYLAND

| | |
|---|---|
| PERDUE FARMS INCORPORATED<br>31149 Old Ocean City Road<br>Salisbury, Maryland 21804, | * |
| | * |
| and | * |
| | * |
| RETIREMENT BENEFITS COMMITTEE<br>OF THE PERDUE SAVINGS PLAN<br>(f/k/a The Perdue Supplemental Retirement Plan)<br>31149 Old Ocean City Road<br>Salisbury, Maryland 21804, | * |
| | * |
| Plaintiffs, | * |
| v. | * |
| TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA<br>One Tower Square<br>Hartford, CT 06183, | * |
| | * |
| and | * |
| RELIANCE INSURANCE COMPANY<br>Three Parkway<br>Philadelphia, PA 19102, | * |
| Defendants. | * |

WMN 03 CV 1148

Civil Action No.

## COMPLAINT

Plaintiffs Perdue Farms Incorporated ("Perdue") and the Retirement Benefits Committee

of The Perdue Savings Plan ("the Plan"), by their attorneys, for their complaint against the

defendants, both of which are insurance carriers, state as follows:

## INTRODUCTION

Perdue and the Plan bring this action against the defendant insurers seeking damages and declaratory relief.

2.      In December 1999, Perdue and the Plan were sued in federal court for the District of Delaware by Leona Trotter and seven other current and former employees (the "Trotter plaintiffs"), on behalf of themselves and all others similarly situated. Following extensive discovery, motions practice, and certification of the plaintiff class, and while the appeal by Perdue and the Plan from the class certification order was pending, Perdue and the Plan reached a settlement agreement in August 2002 with the Trotter plaintiffs and the plaintiff class to settle their claims for payments in excess of $10 million.

3.      Although contractually bound to do so by their respective insurance policies, defendants Travelers Casualty and Surety Company of America and Reliance Insurance Company have failed to indemnify Perdue and the Plan for the amounts paid to settle the Trotter suit, and for other amounts reasonably and necessarily incurred by Perdue and the Plan in connection with the defense and settlement of the Trotter suit.

## PARTIES

4.      Perdue is a Maryland corporation with its headquarters in Salisbury, Maryland. Perdue was at all times relevant hereto authorized to do business in the State of Maryland and regularly conducted business in the State of Maryland. Perdue is in the business of supplying poultry products. Perdue is the plan sponsor of the Plan, within the meaning of the Employee Retirement Income Security Act ("ERISA").

-2-

5. The Plan is a qualified savings and retirement plan within the meaning of ERISA and the Internal Revenue Code, with its headquarters in Salisbury, Maryland. At all times relevant hereto, the Plan provided savings and retirement benefits to Perdue employees.

6. Defendant Travelers Casualty and Surety Company of America ("Travelers") is an insurance company that was at all times relevant hereto authorized to sell insurance in the State of Maryland and regularly conducted business in the State of Maryland.

7. Defendant Reliance Insurance Company ("Reliance") is an insurance company that was at all times relevant hereto authorized to sell insurance in the State of Maryland and regularly conducted business in the State of Maryland.

## JURISDICTION

8. This Court may exercise personal jurisdiction over Travelers and Reliance, pursuant to §6-103(b) of the Courts and Judicial Proceedings Article of the Maryland Code, because at all times relevant hereto Travelers and Reliance regularly did or solicited business and engaged in other persistent courses of conduct in the State of Maryland, breached certain contractual obligations owing to Perdue and the Plan and thereby caused injury in this State, and provided insurance to persons within this State.

9. Venue is proper in this Court, pursuant to §6-201(a) of the Courts and Judicial Proceedings Article of the Maryland Code, because at all times relevant hereto Travelers and Reliance regularly conducted and solicited business in Wicomico County, Maryland; because the harm complained of occurred in Wicomico County, Maryland; and because Perdue and the Plan reside in Wicomico County, Maryland.

- 3 -

## FACTS COMMON TO BOTH COUNTS

### The Trotter Complaint

10.     On December 16, 1999, Leona Trotter and seven other current and former
employees, on behalf of themselves and all others similarly suited, filed an eight count complaint
against Perdue and the Plan in the United States District Court for the District of Delaware.  The
action was styled Trotter et al. v. Perdue Farms Incorporated et al., Case No. 99-893 (D. Del.).

1     In their complaint, the Trotter plaintiffs alleged that Perdue violated the law by (i)
failing to pay hourly chicken processing line workers for time spent getting, putting on,
sanitizing, taking off, and cleaning protective and sanitary clothing and equipment; (ii) not
paying some chicken processing line workers for some required work after the "line card" for
their department had been clocked out; (iii) not keeping a record of hours worked but not paid
for, preventing some employees from becoming eligible for retirement benefits; and (iv) not
contributing to the Plan two percent of the pay that the employees would have earned if they had
been paid for the time referred to in (i) and (ii) above  The Trotter plaintiffs alleged that
Perdue's compensation and record-keeping practices violated the Employee Retirement Income
Security Act ("ERISA"), the federal Fair Labor Standards Act, and various state wage and hour
laws.

12     The Trotter plaintiffs asserted that Perdue engaged in a pattern and practice of
unlawful conduct by failing to compensate Perdue's employees for the time described in
Paragraph 11 (i) and (ii) above (which plaintiffs called "off-the-clock" work), and by failing to
record and report this time to the Plan.  The Trotter plaintiffs asserted that, by engaging in this
pattern of compensation and record-keeping practices, Perdue violated ERISA, unlawfully
interfered with the rights of Perdue's employees to accrue benefits under the Plan, and prevented

- 4 -

the employees from attaining benefits under the Plan. These allegations were repeated or were incorporated by reference in each of the claims for relief in the <u>Trotter</u> complaint.

13. In their prayer for relief, the <u>Trotter</u> plaintiffs sought <u>inter alia</u> an award of unpaid wages or "back pay" for all hours worked "off-the-clock" for which they had not been paid, an order requiring Perdue to make contributions to the Plan based on such "off-the-clock" work, and an order requiring that Perdue credit all class members with hours of service for all their past and future "off-the-clock" work.

**The Litigation**

14. Perdue and the Plan answered the <u>Trotter</u> plaintiffs' complaint and denied the material allegations of the complaint. In particular, Perdue and the Plan denied that Perdue's compensation practices were unlawful or were motivated by a desire to interfere with the employees' rights or attainment of benefits under the Plan.

15. Thereafter the parties to the <u>Trotter</u> suit engaged in extensive discovery, taking depositions, responding to one another's numerous written requests for information, and to one another's written requests for voluminous documents relating to the complaint by the <u>Trotter</u> plaintiffs and to the answer by Perdue and the Plan. The parties also filed numerous motions asking the court for various pre-trial rulings.

16. One such motion was the <u>Trotter</u> plaintiffs' motion that the court grant permission to the <u>Trotter</u> plaintiffs to sue not only on their own behalf but also on behalf of the thousands of other current and former Perdue employees. The <u>Trotter</u> court granted this motion by an order dated August 16, 2001. Perdue appealed this order to the United States Court of Appeals for the Third Circuit. Perdue's appeal had been argued before the court of appeals, but no decision had been issued, at the time the parties reached the settlement described below.

- 5

## The Settlement

17.     The Trotter plaintiffs, and Perdue and the Plan, attempted at several points during the Trotter lawsuit to resolve the suit through mediation. These mediation sessions were held in August 2000, in June 2001, and in June through August 2002. The Honorable Mary Pat Thynge, United States Magistrate Judge, United State District Court for the District of Delaware, acted as the mediator.

18.     Following protracted discussions and arm's length bargaining by all parties, and with the assistance of Magistrate Judge Thynge, the parties reached an understanding regarding settlement of the Trotter complaint in late June 2002.

19.     After further negotiations, the parties submitted a final Settlement Agreement and related documents to Magistrate Judge Thynge for approval.

20.     Magistrate Judge Thynge granted preliminary approval to the terms of the Settlement Agreement on August 7, 2002

21     Following notice to the class and an opportunity for class members to comment on the settlement, Magistrate Judge Thynge granted final approval to the Settlement Agreement at a fairness hearing on October .7, 2002. Magistrate Judge Thynge also made rulings on October 17, 2002, at a hearing immediately prior to the fairness hearing, clarifying the terms of the settlement and the allocation of the settlement amount.

22     In the Settlement Agreement, Perdue agreed to (i) pay $10 million (the "Settlement Amount") to the plaintiff class, subject to deductions for plaintiffs' attorneys fees and costs and for certain expenses related to the payment, allocation, and distribution of the Settlement Amount; and (ii) pay certain additional expenses related to the payment, allocation, and distribution of the Settlement Amount.

- 6 -

23.     The Settlement Agreement was a compromise of disputed claims.  Perdue and the

Plan did not admit the validity of the Trotter plaintiffs' claims, and the Trotter plaintiffs did not

admit the validity of the defenses asserted by Perdue on the Plan, with one exception.  In the

Settlement Agreement, the Trotter plaintiffs agreed that any allegations of willful misconduct by

Perdue would be deemed to be withdrawn as of the Effective Date of the settlement.

24.     On November 21, 2002, pursuant to the Settlement Agreement, Perdue paid

$3,076,467.38 of the Settlement Amount to the Trotter plaintiffs' attorneys as attorneys fees and

costs, as approved by the court by order dated October 17, 2002.

25     Perdue paid the balance of the Settlement Amount in late February 2003.

26.     Perdue has paid in excess of an additional $400,000 in costs, charges, and

expenses in connection with the investigation, defense, negotiation, and/or settlement of the

Trotter plaintiffs' claims

**The Policies**

27.     Travelers provided insurance coverage to Perdue and to the Plan pursuant to

Fiduciary Responsibility Policy No. 58 FF 103003604 BCM for the policy period October 13,

1999, to October 13, 2000 (the "Travelers Policy").  The limits of insurance in the Travelers

Policy are $10 million

28     By the Travelers Policy, Travelers promised to:

> pay on behalf of the Insured all sums which the Insured shall
> become legally obligated to pay as Damages on account of any
> claim made against the Insured for any Wrongful Act and the
> Company shall have the right and duty to defend such claim
> against the Insured seeking such Damages, even if any of the
> allegations of the claim are groundless, false or fraudulent, and
> may make such investigation and settlement of any claim as it
> deems expedient, but the Company shall not be obligated to pay
> any claim or judgment or to defend any suit after the applicable

-7-

limit of the Company's liability has been exhausted by payment of judgments or settlements.

"Wrongful Act" is defined in the Policy to mean:

a breach of fiduciary duty by the Insured in the discharge of duties as respects the Trust or Employee Benefit Plan designated in the Declarations; the term includes any negligent act, error, or omission of the Insured in the "Administration" of "Employee Benefits".
"Administration" as used herein shall mean:

    (a)   Giving counsel to employees with respect to Employee Benefits;

    (b)   Interpreting Employee Benefits;

    (c)   Handling records in connection with Employee Benefits;

    (d)   Effecting enrollment, termination or cancellation of employees under an Employee Benefits program.

"Employee Benefits" as used herein shall mean the Trust or Employee Benefit Plan designated in the Declarations, Workers' Compensation Insurance, Unemployment Insurance, Social Security, Disability Benefits or COBRA Benefits.

"Damages" is defined in the Policy to mean

sums of money payable as compensation for loss or in discharge of an obligation of an Insured to make good a shortage in the Insured Trust or Employee Benefit Plan. The word "Damages" shall not include:

    (a)   Fines, penalties or taxes.

    (b)   Benefits due or to become due under the terms of the Trust or Plan, unless and to the extent that recovery for such benefits is based upon a Wrongful Act and is payable as a personal obligation of an Insured.

    (c)   Punitive or exemplary damages, unless and to the extent insurable under applicable law.

29    Reliance provided excess insurance coverage to Perdue and to the Plan pursuant

to Pension and Benefit Plan Fiduciary Liability Policy No. B 296 95 66 for the policy period

October 13, 1999, to October 13, 2000 (the "Reliance Policy"). The limits of insurance in the

Reliance Policy are $5 million

- 8 -

30. By the Reliance Policy, Reliance promised to:

be liable for losses insured under the terms and conditions of the [Travelers Policy], except for:

(1)   the Limit of Liability, which shall be the Limit of Liability shown in Item 1 of the DECLARATIONS;

(2)   those exceptions listed in any endorsements attached hereto; and

(3)   the Provisions of this Excess Policy.

The Company shall provide the Insured with insurance during the Policy Period set forth in Item 3 of the Declarations excess of the Underlying Insurance in Item 2 of the Declarations [Travelers Policy]. Coverage hereunder shall apply only after all such Underlying Insurance [Travelers Policy] has been exhausted. (Bracketed material added.)

31. Perdue has paid each of the defendant insurers all premiums required by their respective policies, has provided each of the defendant insurers with all notices required by their respective policies, and has complied with all conditions in their respective policies.

32. By letter dated January 18, 2000, Travelers acknowledged its duty to defend the Trotter complaint. Travelers thereafter defended the Trotter complaint on behalf of Perdue and the Plan.

33. Perdue accepted the defense tendered by Travelers and agreed to certain "reservations of right" asserted by Travelers in its letter of January 18, 2000. Perdue, however, specifically informed Travelers that it did not accept Travelers' proffered reservation of the right to seek reimbursement for defense costs incurred in relation to non-covered claims or causes of action. In addition, Perdue specifically informed Travelers that Perdue did not accept Travelers' proffered reservation of a right to decline to pay any settlement or judgment on any ground not specifically stated in Travelers' letter of January 18, 2000.

- 9 -

In its etter        000 Tra    admitted tha th  **irst, Second, and**
Third laims f   ief  ili Trotter comp   co  ned **al**  ons f **Wrongful A**   thin
th meanin   th T       icy

        In   ter f       00  T         adm ed tha    Tro
mplain  eqi       ard       ys fee  nstitutti Damag   ithi   meanin
Tra    olicy.

        In agre   to sett   Trotter       th **terms and**  nd    provided
th        Agreem  t, erd   **the** lan reasonab  or ed   the statements regarding
erage  T       etter f   ary   000, and   the limited grounds   which Travelers
spec icall reserved   gh  **deci to** pay any sett ement   udgment.

        Although T   elers has de ended the Trotter comp aint on behalf of P. due and
the  an. Travelers has  fused   pa f  the fees and expenses f additional appellate counse
hose representation   erdu  as reasonable and necessary for the appeal that erdu took to
th United **tate** Co   Appeals   the Third Circu from the **trial** urts  **ass** certi cati
order In addition, Travel  has  fused to pa for certain addi onal costs charges.
expenses incurred by erdue   nnection with the  restigation, de ens   otiatier and
settlem   or Trotter  mplain

        **T** elers   R ance ha each fai ed and fused to pa fo or   **emn**ify
erd   for en amoun   to he   erd   settlemen f th Trotter comp

## COUNT I

### (Brea to C tr ct Claim A ai A Defen ts

        laintiffs incorpora   eference the all ga   aragraphs thro gh
aho

40     The Trotter complaint alleges claims against Perdue and the Plan that Travelers was obligated to defend pursuant to the Travelers Policy. Travelers and Reliance are obligated to pay or indemnify Perdue pursuant to their respective policies for amounts Perdue has paid or is obligated to pay pursuant to the terms and conditions of the Settlement Agreement

41     Travelers and Reliance have each breached their promises and contractual obligations under their respective policies to defend and/or indemnify Perdue and the Plan and as to the Trotter complaint.

42     As a result of these breaches, Perdue and the Plan have been damaged, having lost the benefits under the Travelers and Reliance Policies that were promised in the Policies and for which Perdue paid its premiums.

WHEREFORE, plaintiffs request that the Court enter judgment in an amount to be determined but in excess of $10.4 million, plus costs, prejudgment and postjudgment interest, attorneys' fees, and such other relief as the Court may deem appropriate

## COUNT II

### (Request for a Declaratory Judgment Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-401, *et seq.* as to All Defendants)

43.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 42 above

44.     The Trotter complaint alleges claims against Perdue and the Plan that Travelers was obligated to defend pursuant to the Travelers Policy. Travelers and Reliance are obligated to pay or indemnify Perdue pursuant to their respective policies for amounts Perdue has paid or is obligated to pay pursuant to the terms and conditions of the Settlement Agreement.

- 11

45      An actual and justiciable controversy exists between plaintiffs and defendants regarding defendants' obligations under their insurance policies to defend and/or indemnify plaintiffs with respect to the Trotter complaint. Plaintiffs assert that the defendants owe them a **defense and/or indemnity.** The defendants deny or refuse to acknowledge such obligations, in **whole or in part.**

WHEREFORE, Perdue and the Plan request that this Court enter a judgment:

A.      Declaring that Travelers is obligated to provide a defense to Perdue in the Trotter lawsuit, and that Travelers must reimburse Perdue and the Plan for the defense costs and costs of settlement that Perdue has incurred but Travelers has refused to pay;

B.      Declaring that Travelers and Reliance must indemnify Perdue for all amounts that Perdue is obligated to pay pursuant to the Settlement Agreement, together with prejudgment and postjudgment interest; and

C.      Awarding to Perdue and the Plan their costs and attorneys' fees incurred in connection with the instant suit and such other relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

Ernest I. Cornbrooks III
WEBB, BURNETT, JACKSON, CORNBROOKS,
WILBER, VORHIS & DOUSE L.L.P.
115 Broad Street
P. O. Box 910
Salisbury, Maryland  21803
(410) 742-3176

- 12 -

Holly Drumheller Butler
PIPER RUDNICK **LLP**
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000

Attorneys for Plaintiffs

- 13 -

~WASH1:3711580.v2 |3/19/03
7808-161

Circuit Court for __Wicomico County__

_City or County_

## CIVIL–NON-DOMESTIC CASE INFORMATION REPORT

**Directions:**

    *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served.*

    *Defendant: You must file an Information Report as required by Rule 2-323(h).*

    __*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.*__

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT    **CASE NUMBER:** _____
(Clerk to insert)

**CASE NAME:** Perdue Farms Incorporated, et al. Travelers Casualty & Surety Co., et al
                Plaintiff                               Defendant

**JURY DEMAND:**  ☒ Yes  ☐ No    Anticipated length of trial: __ — hours or _3_ days
**RELATED CASE PENDING?**  ☐ Yes  ☒ No    If yes, Case #(s), if known: _____

**Special Requirements?** ☐    Interpreter/communication impairment    Which language _____
(Attach Form 1-332 if Accommodation or Interpreter Needed)    Which dialect _____
        ☐    ADA accommodation: _____

| NATURE OF ACTION (CHECK ONE BOX) | | DAMAGES/RELIEF | |
|---|---|---|---|
| **TORTS** | **LABOR** | **A. TORTS** | |
| ☐ Motor Tort | ☒ Workers' Comp. | **Actual Damages** | |
| ☐ Premises Liability | ☐ Wrongful Discharge | ☐ Under $7,500 | ☐ Medical Bills |
| ☐ Assault & Battery | ☐ EEO | ☐ $7,500 - $50,000 | $_____ |
| ☐ Product Liability | ☐ Other | ☐ $50,000 - $100,000 | ☐ Property Damages |
| ☐ Professional Malpractice | **CONTRACTS** | ☐ Over $100,000 | $_____ |
| ☐ Wrongful Death | ☒ Insurance | | ☐ Wage Loss |
| ☐ Business & Commercial | ☐ Confessed Judgment | | $_____ |
| ☐ Libel & Slander | ☐ Other | | |
| ☐ False Arrest/Imprisonment | **REAL PROPERTY** | | |
| ☐ Nuisance | ☐ Judicial Sale | **B. CONTRACTS** | **C. NONMONETARY** |
| ☐ Toxic Torts | ☐ Condemnation | | |
| ☐ Fraud | ☐ Landlord Tenant | ☐ Under $10,000 | ☒ Declaratory Judgment |
| ☐ Malicious Prosecution | ☐ Other | ☐ $10,000 - $20,000 | ☐ Injunction |
| ☐ Lead Paint | **OTHER** | ☒ Over $20,000 | ☐ Other_____ |
| ☐ Asbestos | ☐ Civil Rights | | |
| ☐ Other | ☐ Environmental | | |
| _____ | ☐ ADA | | |
| | ☐ Other | | |

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION**

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
    A. Mediation    ☐ Yes ☒ No    C. Settlement Conference  ☒ Yes ☐ No
    B. Arbitration    ☐ Yes ☒ No    D. Neutral Evaluation    ☐ Yes ☒ No

**TRACK REQUEST**

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.*
    ☐ ½ day of trial or less        ☒ 3 days of trial time
    ☐ 1 day of trial time        ☐ More than 3 days of trial time
    ☐ 2 days of trial time

**PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY.**

Date _November 2003_    _____
                             Signature
                    Ernest I. Cornbrooks, III
                    115 Broad St., P.O. Box 910, Salisbury, MD 2180?
                    (410-742-3176), one of the attorneys for Plaint