JUDGMENT

FILED: May 16, 2006

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

MAY 1 6 2006

AT BALTIMORE
CLERK U.S DISTRICT COURT
DISTRICT OF MARYLAND
                    DEPUTY

No. 04-2208
CA-03-1148-WMN

PERDUE FARMS, INCORPORATED; RETIREMENT BENEFITS COMMITTEE OF
THE PERDUE SAVINGS PLAN, formerly known as The Perdue
Supplemental Retirement Plan

   Plaintiffs - Appellees

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; RELIANCE
INSURANCE COMPANY

   Defendants - Appellants

---

Appeal from the United States District Court for the
District of Maryland at Baltimore

---

In accordance with the written opinion of this Court filed this day, the Court affirms in part and reverses in part the judgment of the District Court. This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate.

/s/ Patricia S. Connor
_____
CLERK

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| PERDUE FARMS, INCORPORATED; RETIREMENT BENEFITS COMMITTEE OF THE PERDUE SAVINGS PLAN, formerly known as The Perdue Supplemental Retirement Plan,<br>            *Plaintiffs-Appellees,*<br>v.<br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; RELIANCE INSURANCE COMPANY,<br>            *Defendants-Appellants.* | No. 04-2208 |

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(CA-03-1148-WMN)

Argued: March 17, 2006

Decided: May 16, 2006

Before WILKINSON, MICHAEL, and MOTZ, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Michael and Judge Motz joined.

---

## COUNSEL

**ARGUED:** John Carney Hayes, Jr., NIXON PEABODY, L.L.P., Washington, D.C., for Appellants. Stephen Richard Mysliwiec, DLA

PIPER RUDNICK GRAY CARY US, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Leslie Paul Machado, Kevin M. Colmey, NIXON PEABODY, L.L.P., Washington, D.C., for Appellants. Victoria A. Bruno, DLA PIPER RUDNICK GRAY CARY US, L.L.P., Washington, D.C.; Glen K. Allen, DLA PIPER RUDNICK GRAY CARY US, L.L.P., Baltimore, Maryland, for Appellees.

## OPINION

WILKINSON, Circuit Judge:

In this case an insurer issued its insured a policy that covered claims based on violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq. (West 2005), but that did not apply to claims for violations of wage and hour laws. The insurer defended the insured in a class action suit seeking relief under both ERISA and wage and hour statutes, but refused to indemnify the insured for the subsequent $10 million settlement. The insurer contended that the settlement was based predominately, if not completely, on non-covered wage and hour claims. In the ensuing coverage suit, the district court held that the insured was entitled to indemnification for the settlement, and that the insurer could not obtain a partial reimbursement of defense costs.

We hold that the district court properly denied the insurer reimbursement for defense costs, but that a remand is necessary on settlement indemnification because the district court conflated the duty to defend and the duty to indemnify under Maryland law. On remand, aside from limited amounts paid to class action plaintiffs asserting only covered ERISA claims, the district court must determine how apportionment between covered ERISA claims and non-covered wage and hour claims should proceed. We therefore affirm in part, reverse in part, and remand for further proceedings.

I.

Plaintiffs in this case are Perdue Farms, Inc., a Maryland corporation that operates poultry processing facilities in numerous states, and

the Retirement Benefits Committee of the Perdue Savings Plan (collectively "Perdue"). Defendant Travelers Casualty and Surety Company issued Perdue a $10 million Pension and Welfare Fund Fiduciary Responsibility Insurance Policy, effective October 1999 to October 2000.[1] The policy covered damages to third parties arising out of any "Wrongful Act," defined as "a breach of fiduciary duty by the Insured in the discharge of duties as respects the Trust or Employee Benefit Plan." The parties agree that the policy covers claims for relief under ERISA, but that it does not extend to claims for violations of wage and hour laws. Under the policy, Travelers had "the right and duty" to defend Perdue in any suit seeking relief for a "Wrongful Act," "even if any of the allegations of the claim are groundless, false or fraudulent."

In December 1999, Leona Trotter and several other current and former Perdue employees filed suit against Perdue in federal court, challenging as unlawful Perdue's compensation and record-keeping practices. According to the district court:

> [T]he plaintiffs in the underlying suit (the *Trotter* plaintiffs) alleged that Perdue's statutory violations stemmed from its practices of: (1) not paying hourly chicken-processing line workers for time spent putting on, taking off, and cleaning protective sanitary clothing and equipment; (2) not paying some chicken-processing line workers for some work after the line card for their department had been clocked out; (3) not keeping a record of hours worked but not paid for, preventing some employees from becoming eligible for retirement benefits; and (4) not contributing to the [Perdue Supplemental Retirement] Plan two percent of the pay that employees would have earned if they had been paid for the work time reference[d] in (1) and (2) above.

---

[1] An excess insurance policy with Reliance Insurance Company, also a defendant here, provided an additional $5 million in coverage. Travelers acquired certain divisions of Reliance and is now responsible for paying claims asserted against it. We will thus refer to both insurers collectively as Travelers.

The *Trotter* plaintiffs' amended nine-count complaint alleged three counts under ERISA, one count under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 201 et seq. (West 2005), and five counts under the wage and hour laws of Delaware, Kentucky, Maryland, North Carolina, and South Carolina.

Perdue notified Travelers of the *Trotter* suit shortly after it was filed. Travelers thereafter determined that the ERISA claims created a potentiality of coverage that triggered its duty to defend Perdue. Travelers did, however, reserve its rights to refuse to pay any settlement or judgment, to decline to defend non-covered wage and hour claims, and to seek reimbursement for defense costs expended on non-covered claims.[2] During the next several years, Travelers paid for Perdue's defense. At the present time, it has spent over $4.4 million defending Perdue in the *Trotter* matter.

On August 16, 2001, the *Trotter* litigation was certified as a class action. *See Trotter v. Perdue Farms, Inc.*, No. CIV.A.99-893-RRM, 2001 WL 1002448, at *2-3 (D. Del. Aug. 16, 2001). The class was defined as "[a]ll persons who at any time from December 16, 1993, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue, and who were or are participating in the Perdue Supplemental Retirement Plan." *Id.* at *2. Additional subclasses were also certified, including one for each state whose wage and hour laws were allegedly violated. *Id.* at *3. Membership in these subclasses did not require participation in Perdue's Supplemental Retirement Plan. *Id.* Collectively, the primary class and state subclasses requested (1) backpay, overtime pay, and liquidated damages under the FLSA and state wage and hour laws; (2) ERISA plan contributions, injunctive relief, and "back pay incidental to such injunctive relief" under ERISA, *see* 29 U.S.C. §§ 1132(a)(3), 1140 (2000); and (3) attorneys' fees.

In June 2002, Perdue settled with the *Trotter* plaintiffs for $10 million and limited injunctive relief. Neither party admitted the validity of the other side's claims or defenses, but the *Trotter* plaintiffs did

---

[2] We reject Perdue's contention that Travelers cannot raise certain defenses due to a failure to properly reserve its rights.

withdraw any allegation that Perdue engaged in willful misconduct. The settlement agreement did not indicate how much of the $10 million was attributable to covered ERISA claims. However, relying on findings by the magistrate judge overseeing the *Trotter* settlement, the district court determined, and the parties do not dispute, that approximately $3 million was assigned to the *Trotter* plaintiffs' class counsel for fees and costs, $775,092 compensated plaintiffs asserting only wage and hour claims, and $907,954.32 was distributed to plaintiffs asserting only ERISA claims. The remainder was remitted to plaintiffs asserting both ERISA and wage and hour claims.

Perdue requested that Travelers indemnify it for the *Trotter* settlement. Travelers refused, contending that the settlement was based primarily, if not entirely, upon non-covered wage and hour claims. Perdue thereafter filed suit in Maryland state court, and Travelers removed the case to federal court. Perdue sought as indemnification for the *Trotter* settlement $9,428,841, plus prejudgment interest. This figure includes the entirety of the *Trotter* settlement, except the $775,092 paid to those *Trotter* plaintiffs asserting only wage and hour claims and $98,515 in attorneys' fees related solely to those claims. Perdue conceded that these sums were unrelated to any ERISA claims, and therefore not covered by the insurance policy. The $9,428,841 figure also includes Perdue's additional expenditures of $248,994 in settlement costs and $53,455 in legal services. Travelers filed a counterclaim seeking reimbursement from Perdue of that portion of the approximately $4.4 million in defense costs attributable to non-covered wage and hour claims. Both parties moved for summary judgment.

The district court held that Travelers could not obtain reimbursement for defense costs, and that Perdue was entitled to indemnification for the *Trotter* settlement. With respect to indemnification, Travelers argued in the court below that ERISA does not contain a remedy for backpay and that the thrust of the *Trotter* plaintiffs' allegations amounted to claims for violations of wage and hour laws, not ERISA. The district court disagreed, reasoning that Travelers was required to compensate Perdue for the *Trotter* settlement because Perdue was "potentially liable" under ERISA. According to the district court, Perdue faced potential liability for this covered claim because the Supreme Court had yet to determine whether backpay constitutes

an appropriate remedy under ERISA, and because the record provided a sufficient factual basis to conclude that the *Trotter* settlement was based, at least in part, on potential ERISA liability. The district court further held that Travelers was liable for the entire amount Perdue requested because the non-covered wage and hour claims were "reasonably related" to the covered ERISA ones.[3] With respect to Travelers's counterclaim for defense costs, the district court held that no such right of partial reimbursement existed under Maryland law. Travelers appeals.

II.

This case involves two separate concepts in the law of insurance: the duty to defend and the duty to indemnify. We begin with a brief discussion of these duties and their differences, and then proceed to Travelers's request for defense costs and Perdue's request for indemnification of the *Trotter* settlement.

---

[3] We reject, as did the district court, Travelers's contention that various exclusions in its insurance policy operate to defeat its duty to indemnify. Exclusion 7 denies coverage for any claim "[a]rising out of the Insured gaining in fact any personal profit or advantage to which such Insured was not legally entitled." In contradistinction to the wage and hour claims, which specifically stated that Perdue's labor law violations were "for the benefit of Perdue," the *Trotter* plaintiffs' ERISA claims never alleged that Perdue gained any advantage from its unlawful conduct. In any event, the alleged ERISA violations do not "aris[e] out of" illegal profiteering, because 29 U.S.C. § 1140 proscribes specified conduct, not profit. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 400 (D. Del. 2002) (exclusion "requires a profit or gain that is illegal; not an illegal act that produces a profit or gain to the insured as a by-product"). Exclusion 8 precludes coverage for any claim "[f]or the failure to collect contributions owed to the Trust or Employee Benefit Plan . . . from employers." This exclusion is inapplicable because the *Trotter* plaintiffs did not allege that the Retirement Benefits Committee failed to collect payments from Perdue, but rather that Perdue failed to contribute to the benefits plan because it failed to pay proper wages. Application of these two exclusions would swallow most of the insurance coverage altogether, and to the extent either exclusion is ambiguous, any textual uncertainty must be construed against Travelers, the policy's drafter, *see, e.g., Megonnell v. U.S. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002).

A.

In Maryland, it is axiomatic that the duty to defend is broader than the duty to indemnify. *See, e.g., Provident Bank of Md. v. Travelers Prop. Cas. Corp.*, 236 F.3d 138, 143 (4th Cir. 2000); *BGE Home Prods. & Servs., Inc. v. Owens*, 833 A.2d 8, 14 (Md. 2003); *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 569 (Md. 1997). These obligations are conceptually distinct, and are triggered by different circumstances.

The duty to defend refers to an insurer's obligation to defend its insured when a third party files suit. This duty arises at the outset of litigation against the insured, whenever the underlying complaint and other appropriate extrinsic evidence reveal claims that are even potentially covered under the insurance policy. *See, e.g., Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106-07 (Md. 2004); *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 656 A.2d 779, 784 (Md. 1995). "In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 544 (Md. 1996); *see also Litz*, 695 A.2d at 572. Doubts as to potential liability are resolved against the insurer. *See Clendenin Bros. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 394 (Md. 2006). And in most circumstances, "if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, notwithstanding alternative allegations outside the policy's coverage," *Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000) (internal quotation marks omitted); *see also Montgomery County Bd. of Educ. v. Horace Mann Ins. Co.*, 840 A.2d 220, 226 (Md. Ct. Spec. App. 2003) (same).

The duty to indemnify, by contrast, refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim. "[T]he duty to indemnify depends upon liability," i.e., an insurer's obligation to pay a judgment or settlement. *Walk*, 852 A.2d at 106; *see Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999); *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1061 (Md. 1999). This duty is thus narrower than the duty to defend. While an insurer must frequently defend both potentially covered claims and claims that are not covered under its policy, it is only

required to indemnify covered claims for which liability is incurred. *See, e.g., Mesmer*, 725 A.2d at 1061; *Utica Mut. Ins. Co.*, 746 A.2d at 940. With the parameters of the duties to defend and indemnify set forth, we turn first to Travelers's request for reimbursement of defense costs.

### III.

After concluding that the ERISA claims in the *Trotter* complaint created a potentiality of coverage, Travelers expended more than $4.4 million defending Perdue in the *Trotter* litigation. Travelers now contends that it is entitled to a partial reimbursement of defense costs for those funds allocated to the defense of non-covered wage and hour claims. The district court disagreed, as do we.

While jurisdictions differ on the soundness of an insurer's right to reimbursement of defense costs, *compare Buss v. Superior Court*, 939 P.2d 766, 776-78 (Cal. 1997) (approving of the right), *with Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101 (Ill. 2005) (disapproving of the right), *and Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 511 (Wyo. 2000) (same), Travelers has not identified a single Maryland case that extends this right to insurers. Under Maryland's comprehensive duty to defend, if an insurance policy potentially covers any claim in an underlying complaint, the insurer, as Travelers did here, must typically defend the entire suit, including non-covered claims. *See, e.g., Montgomery County Bd. of Educ.*, 840 A.2d at 226; *Utica Mut. Ins. Co.*, 746 A.2d at 940. Properly considered, a partial right of reimbursement would thus serve only as a backdoor narrowing of the duty to defend, and would appreciably erode Maryland's long-held view that the duty to defend is broader than the duty to indemnify, *see, e.g., Walk*, 852 A.2d at 106.

A partial right to reimbursement of defense costs would moreover undermine the bargain that Maryland courts describe insurers reaching with their insureds. The usual commercial liability policy, including the policy that Travelers issued to Perdue, states that the insurer has both the "duty" and the "right" to defend its insured. *See, e.g., Sherwood Brands, Inc. v. Hartford Accident & Indem. Co.*, 698 A.2d

1078, 1083 (Md. 1997). Under Maryland law, "[t]hese are, essentially, reciprocal or correlative provisions." *Id.*

The arrangement is beneficial to both parties. "The *duty* to defend is primarily, of course, for the benefit of the insured," *Sherwood Brands*, 698 A.2d at 1083, and for its part, the insured receives a full defense, *see, e.g., Utica Mut. Ins. Co.*, 746 A.2d at 940. As Maryland courts have long explained, "[a]lthough the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him." *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 851 (Md. 1975); *see also Sherwood Brands*, 698 A.2d at 1083 (noting that defense costs will often exceed the amount of any liability in an underlying action).

The insurer, in turn, secures the *right* to defend "as a mechanism for protecting and minimizing its duty of indemnification." *Sherwood Brands*, 698 A.2d at 1083. "'Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify.'" *Applied Signal & Image Tech., Inc. v. Harleysville Mut. Ins. Co.*, 252 F. Supp. 2d 215, 218-19 (D. Md. 2003) (quoting *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219 (3d Cir. 1989)); *see also Sherwood Brands*, 698 A.2d at 1083. Taking the arrangement as Maryland has thus characterized it, allowing a partial recoupment of defense costs would significantly tip the scales in favor of the insurer. Under Travelers's proposed rule, liability insurance would all but cease to function as "'litigation insurance,'" *Brohawn*, 347 A.2d at 851, instead merely providing insureds with an up-front defense whose line-item costs would then be the subject of subsequent litigation.

In the absence of any contrary indication from the Maryland courts, we are unwilling to grant insurers a substantial rebate on their duty to defend. And even if Maryland might at some point look favorably on a right of partial reimbursement, in this case the defense costs for covered and non-covered claims may have significantly overlapped, as the district court found. We thus affirm the judgment of the district court that Travelers is not entitled to recover defense costs attributable to non-covered claims.

IV.

We next turn to Travelers's duty to indemnify the *Trotter* settlement. The district court held that Perdue was entitled to virtually full indemnification because it was, as a legal and factual matter, "potentially liable" under ERISA, and because the non-covered wage and hour claims were "reasonably related" to the covered ERISA claims. Both of these determinations were misstatements of Maryland law, and cannot support the conclusion that Travelers was required to indemnify Perdue for the entire sum it was seeking.

A.

First, in relying on the "potentiality rule" in the context of indemnification, the district court conflated the duty to defend and the duty to indemnify. The potentiality rule applies only to the duty to defend. *See T.H.E. Ins. Co. v. P.T.P. Inc.*, 628 A.2d 223, 225 n.3 (Md. 1993). It does not govern the duty to indemnify, because an insurer has no obligation to remunerate its insured for claims not covered under its policy. *See Employers Mut. Liab. Ins. Co. of Wis. v. Hendrix*, 199 F.2d 53, 59 (4th Cir. 1952); *see also Balt. Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 514 (Md. Ct. Spec. App. 1997). As Maryland's highest court has stated:

> Under the typical liability insurance policy, the insurer has a duty to indemnify the insured, up to the limits of the policy, for the payment of a judgment based on a liability claim which is *covered*. The insurer also has a duty to defend the insured against a liability claim which is *covered* or which is *potentially covered*.

*Mesmer*, 725 A.2d at 1061 (emphasis added). Thus, a "major distinction" between the duties to defend and indemnify "is that the duty to defend depends only upon the facts as alleged, and the duty to indemnify depends upon liability." *Walk*, 852 A.2d at 106. For this reason, courts applying Maryland law may conclude that an insurer has a duty to defend, but commonly withhold judgment on the scope of the duty to indemnify until the insured is found liable and the basis of any settlement or judgment is determined. *See, e.g., Sheets*, 679 A.2d at 542,

551; *Mut. Benefit Group v. Wise M. Bolt Co.*, 227 F. Supp. 2d 469, 478-79 (D. Md. 2002).

Neither Perdue nor the district court cite a single Maryland case applying the potentiality rule to indemnification, and this is understandable. "Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify." *Litz*, 695 A.2d at 570. Under Perdue's rule, by contrast, an insurer must indemnify in *every* instance in which it is required to defend. The district court improperly indulged this theory, which would undermine Maryland's longstanding view that the duty to defend is broader than the duty to indemnify.[4]

B.

The district court also erred in concluding that Travelers had a duty to indemnify all claims "reasonably related" to those covered by its policy. The "reasonably related" rule, first announced in *Continental Casualty Co. v. Board of Education*, 489 A.2d 536, 542-45 (Md. 1985), limits slightly the complete duty to *defend* in the specific context of directors and officers (D & O) liability insurance. In *Continental Casualty*, the Court of Appeals of Maryland considered a D & O policy with no "duty to defend" language and held that the insured could not obtain costs for defending an entire suit, but could receive costs for those legal services "reasonably related to defense of a covered claim." *Id.* at 542-43, 545. In the insurance context, this "reasonably related" principle has been limited to the duty to defend, *see, e.g., id.* at 542-45, and in most cases still further limited to the spe-

---

[4]The district court's conclusion that Perdue faced "a significant risk" of ERISA liability because the Supreme Court has yet to decide whether backpay constitutes an available remedy under ERISA was thus also premised on its improper reliance on the potentiality rule. Even if the Supreme Court were at some future point to hold that ERISA provides for awards of backpay in some circumstances, it is hard to believe that ERISA would displace the federal and state wage and hour regulations as a primary measure for amounts due and owing the class action plaintiffs. In all events, we expressly decline to resolve questions of ERISA's coverage that may well end up being irrelevant to the district court's apportionment inquiry on remand.

cific area of D & O insurance, *see, e.g., Collier v. MD-Individual Practice Ass'n, Inc.*, 607 A.2d 537, 542 n.1 (Md. 1992) (describing *Continental Casualty* as a D & O case); *Telxon Corp. v. Fed. Ins. Co.*, 309 F.3d 386, 389-90, 393-94 (6th Cir. 2002) (same); *Fed. Realty Inv. Trust v. Pac. Ins. Co.*, 760 F. Supp. 533, 535 (D. Md. 1991) (same). Perdue has not directed our attention to any Maryland case that extends the rule to the indemnification of settlement amounts.

Perdue nevertheless argues that "[t]he logic of *Continental Casualty* applies equally to the indemnification of settlement costs as it does to the indemnification of defense costs." We disagree. As articulated, the reasonably related rule helps sort through specific itemized legal costs, *see Cont'l Cas. Co.*, 489 A.2d at 544-46, and it is entirely unclear how such a rule would map onto the dissimilar considerations involved in a mixed-action settlement.

And even if the rule could be transported into the indemnification context, it would inexorably result in an expansion of the duty to indemnify well beyond the payment of insured claims, *see Mesmer*, 725 A.2d at 1061, so long as the non-covered claims related in some uncertain manner to those that were covered. Because even a suit with multiple claims will typically involve both a similar set of operative facts and overlapping legal theories, applying the reasonably related rule to indemnification would often leave insurers footing the bill for an entire judgment or settlement, even for those claims the policy did not reach. This, of course, would expand the duty to indemnify to near if not complete parity with the duty to defend. The instant case proves the point, for the district court concluded that the entire requested settlement amount was "reasonably related" to the covered ERISA claims. Maryland law provides no support for this approach, and we again decline Perdue's invitation to dismantle the longstanding distinction between the duty to defend and the duty to indemnify.

### C.

Notwithstanding the standards applied by the district court, Perdue nonetheless insists that a full indemnification award is justified because of the nature of the *Trotter* litigation. It is true that we would affirm the judgment if the record of the *Trotter* litigation confirmed that the class action settlement was based on covered ERISA claims.

| PERDUE FARMS V. TRAVELERS CASUALTY | 13 |
|---|---|

But even a brief review of the record persuades us that the nature of the *Trotter* litigation cannot provide a sufficient justification for granting Perdue the full indemnification that it seeks. We caution that the discussion herein is not intended to provide a formula for apportionment, but rather to set forth a full explanation for why Perdue's claim for complete indemnification here is not well-taken.

First, in raising claims under both ERISA and wage and hour laws, the *Trotter* plaintiffs were simultaneously pursuing relief for distinct injuries under statutes that govern separate aspects of the employer-employee relationship. "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). But while ERISA serves these important congressional objectives, it was not designed to address every conceivable aspect of an employee's monetary rights, and it is not primarily concerned with hourly wages and overtime pay, the domain of the FLSA and its state counterparts. As the Supreme Court has instructed, "the danger of defeated expectations of wages for services performed [is] a danger Congress chose *not* to regulate in ERISA." *Morash*, 490 U.S. at 115 (emphasis added); *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N. A.*, 519 U.S. 316, 327 (1997). For this reason, "the distinction between 'wage' compensation (not regulated by ERISA) and 'benefit' compensation (regulated by ERISA) must be sensitively drawn to avoid invalidating state regulatory schemes Congress intended to encourage." *Cal. Hosp. Ass'n v. Henning*, 770 F.2d 856, 861 (9th Cir. 1985).

In this case, by seeking relief under both wage and hour laws and ERISA, the *Trotter* plaintiffs thus pursued remedies for two different kinds of injuries, one based on inadequate wage compensation, the other based on insufficient benefit compensation. The *Trotter* plaintiffs alleged both that Perdue had failed to pay them wages for time worked, and that Perdue violated ERISA by improperly maintaining plan records, not crediting employees with hours of service, and not contributing to the Supplemental Retirement Plan two percent of the wage compensation that Perdue wrongfully withheld. These claims were different in kind and in fact, and addressed themselves to differ-

ent aspects of Perdue's responsibilities as an employer. In view of the fact that employer violations of wage and hour laws and employer violations of ERISA are hardly coincident, the district court was incorrect to award nearly full indemnification to Perdue under a policy that covered only ERISA-based claims.

Quite aside from this general proposition, the wage and hour-based claims represented a not insignificant part of the *Trotter* plaintiffs' allegations. Their primary contention, after all, was simply that Perdue had failed to pay them wages for time worked. Specifically, the *Trotter* complaint alleged that Perdue had clocked out chicken-processing line employees before their workday was actually complete, and that Perdue also did not pay these workers for minutes spent donning and doffing the protective attire — smocks, aprons, boots, gloves, arm guards, and the like — that is needed for the assembly-line slaughter, deboning, and packaging of chicken.

The *Trotter* plaintiffs' allegations concerning ERISA were, if anything, more limited than their wage and hour claims, and in any event would not serve as a basis for the near complete indemnification awarded by the district court. Many of the ERISA allegations were effectively contingent on Perdue's failure to pay wages in the first place. The *Trotter* plaintiffs contended that Perdue failed to contribute to the Supplemental Retirement Plan two percent of the pay they would have earned had Perdue properly compensated them for the work described above. The plan of allocation for the *Trotter* class action settlement further indicates that the unpaid plan contributions were to be deducted from the payments to individual class members rather than made in addition thereto. And while the *Trotter* plaintiffs did seek injunctive relief under ERISA, this relief of course could not translate into monetary awards in the class action settlement. Many of the alleged ERISA violations were, in sum, often collateral consequences of Perdue's wage and hour violations, and to the extent that Perdue's failure to make plan contributions exposed it to any additional liability, this liability was not of such magnitude as to justify an indemnity award for virtually all of the total settlement amount.

Nor do the events leading up to the consummation of the *Trotter* settlement support Perdue's claim for nearly full indemnification. As early as January 2000, several weeks after the filing of the *Trotter*

complaint, Perdue informed Travelers that "the preponderance of any potential awards may very well fall outside the indemnity obligation of Travelers, which at this time may be limited to the ERISA counts." Several months later, in July 2000, the *Trotter* plaintiffs offered to settle for $40 million, assessing Perdue's total potential monetary exposure at close to $223 million. Of this latter amount, only about $1.6 million was tabbed as ERISA-based liability. In May 2002, the *Trotter* plaintiffs submitted a revised settlement demand of $17 million, this time pegging Perdue's total liability exposure at approximately $56 million. Only $367,500 was assigned to ERISA-based liability.

For all of the above reasons, treating the ERISA claims as the dominant feature of the *Trotter* liability would turn the insurance policy on its head. To affirm the judgment on the basis of this record would simply impose liability upon Travelers for claims that its insurance policy never covered. This we cannot do.

### D.

The district court's conclusion that Travelers was required to indemnify Perdue for the full amount it was seeking thus cannot stand on its own reliance on the potentiality and reasonably related rules, nor can we uphold the judgment on the record before us. We therefore remand this case to the district court for an appropriate determination of Travelers's duty to indemnify. "[T]he duty to indemnify depends upon liability," *Walk*, 852 A.2d at 106, and "[c]learly there can be no judgment against [Travelers] until it is determined what part of the [*Trotter* settlement] was paid" in satisfaction of covered claims, *Hendrix*, 199 F.2d at 59. This is an inquiry that the district court must now undertake.

### V.

We thus turn to how the district court should proceed on remand. As described above, the situation before us is as follows: Perdue has entered a settlement of both covered and non-covered claims, the settlement agreement does not fully indicate how liability was allocated between them, and Travelers is not liable for non-covered claims. This scenario evidently arises with some frequency, but the apportion-

ment of settlement amounts between covered and non-covered claims is typically resolved through negotiation and private agreement, as litigation costs can be astronomical. *See, e.g.*, 4 David L. Leitner et al., *Law and Practice of Insurance Coverage Litigation* § 47:44 (2005); 1 Allan D. Windt, *Insurance Claims & Disputes* § 6:31 (4th ed. 2001 & Supp. 2005); William H. Black, Jr., *Coverage Conundrum: Post-settlement Determination of an Insurer's Indemnity Obligation*, 26 Ins. Litig. Rep. 205, 205, 216 (2004); Davis J. Howard, *Apportioning an Insurer's Liability Between Covered and Noncovered Parties and Claims*, in Insurance, Excess, and Reinsurance Coverage Disputes, 597, 599, 602, 613 (Barry R. Ostrager & Thomas R. Newman eds., 1989). Litigation of this type also has the unfortunate consequence of reducing the cost-savings associated with settling the underlying action in the first place.

Nevertheless, we have held that when courts are presented with this situation, the only proper solution is a rough apportionment of settlement amounts among covered and non-covered claims. *See Employers Mut. Liab. Ins. Co. of Wis. v. Hendrix*, 199 F.2d 53, 59-60 (4th Cir. 1952); *accord Lockwood Int'l, B.V. v. Volm Bag Co.*, 273 F.3d 741, 743 (7th Cir. 2001); *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1494-95 (5th Cir. 1992); *Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 376, 378-79 (1st Cir. 1991); *Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co.*, 802 F.2d 667, 674 (3d Cir. 1986); 2 Leitner et al., *supra* § 23:30 ("[I]f a judgment or settlement includes several claims, some of which are covered and others of which are not covered, the judgment or settlement must be allocated as between covered and uncovered claims."); Windt, *supra* § 6:31 & n.3 (discussing apportionment and collecting cases). We have similarly held that apportionment is necessary in the analogous context of a general jury verdict that does not separate out liability between covered and non-covered claims. *See Bd. of County Supervisors v. Scottish & York Ins. Servs., Inc.*, 763 F.2d 176, 179 (4th Cir. 1985); *see also Sheets*, 679 A.2d at 542 (declining to resolve an insurer's indemnity obligation for a mixed-action settlement where the record contained no indication of how damages were allocated among covered and non-covered causes of action). In these situations, the burden is on the insured to prove the amounts attributable to covered claims. *See, e.g., Canadian Universal Ins. Co.*, 924 F.2d at 376; Windt, *supra* §§ 6:26, 6:31.

On remand, it is at least clear that Travelers must indemnify Perdue for the $907,954.32 in settlement awards paid to *Trotter* plaintiffs asserting *only* ERISA claims. This sum plainly represents liability for a covered claim, *see Mesmer*, 725 A.2d at 1061, and Travelers does not suggest that the amount is otherwise unreasonable. The district court must also determine how apportionment of the remaining liability between covered and non-covered claims should proceed. We do not pass upon the appropriate guideposts that are to govern apportionment, a subject that neither party has briefed or argued here.

We do note that most courts and commentators to have considered the allocation of settlement amounts have recommended consideration of a variety of factors short of a full trial of the original suit, *see, e.g., Enserch Corp.*, 952 F.2d at 1495; *Hendrix*, 199 F.2d at 59-60; Windt, *supra* § 6:31. These factors include the underlying complaint and settlement agreement, *see, e.g., Enserch Corp.*, 952 F.2d at 1494-95, the intent of the parties entering the settlement, *see, e.g., Am. Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22, 31 (1st Cir. 1986); Windt, *supra* § 6:31, and the relative merits of the underlying claims, *see, e.g., Enserch Corp.*, 952 F.2d at 1495; *Hendrix*, 199 F.2d at 59-60. The relevance of these factors and others may be a proper subject on remand. And while we have broached some considerations in our preceding discussion, they are not intended to be exhaustive, and the district court must consider them with the benefit of briefing and argument from the parties.

VI.

In sum, Travelers is not entitled to partial reimbursement from Perdue for that portion of the $4.4 million expended on the defense of non-covered claims. Travelers is not required, however, to indemnify Perdue for the $775,092 in settlement awards paid to *Trotter* plaintiffs asserting only wage and hour claims, as well as the $98,515 in attorneys' fees related exclusively to those claims. Perdue acknowledges these amounts are unrelated to any ERISA claims, and does not seek them here. By the same token, however, Travelers must indemnify Perdue for the $907,954.32 distributed to *Trotter* plaintiffs asserting only ERISA claims. And while it may well be that Travelers does have some further duty to indemnify, it simply cannot be true that

Travelers is required to indemnify Perdue for the full amount Perdue now seeks.

We thus affirm the district court's conclusion that Travelers may not obtain reimbursement of defense costs, but reverse and remand for further proceedings consistent with this decision on Travelers's duty to indemnify.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*