IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERDUE FARMS INC., <u>et al.</u>          :
                                         :
v.                                       :    Civil Action WMN-03-1148
                                         :
TRAVELERS CASUALTY AND SURETY            :
CO. OF AMERICA, <u>et al.</u>            :

<u>MEMORANDUM</u>

Pending before the Court is the "Motion to Certify Determinative Question of Law to the Maryland Court of Appeals," Paper No. 87, filed by Plaintiffs Perdue Farms, Inc. and the Retirement Benefits Committee of the Perdue Savings Plan (the Plan) (collectively Perdue).[1]  Also before the Court are cross-memoranda regarding allocation criteria filed by Perdue and Defendants Travelers Casualty and Surety Company of America and Reliance Insurance Company (collectively Travelers). Papers No. 114 & 115.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Plaintiff's motion will be denied and that the factors suggested by Travelers' will be adopted by this Court for purposes of the allocation proceeding.

I.  BACKGROUND

The long history of this case has been set forth in prior opinions of this Court and of the Court of Appeals for the Fourth

---

[1]Also pending before the Court is Perdue's "Motion Under FRCP 54(d) for Attorney's Fees and Related Expenses."  Paper No. 67.  This motion was filed prior to the decision by the Court of Appeals for the Fourth Circuit to affirm in part and reverse in part this Court's grant of summary judgment in favor of Perdue. As this motion was premised on Perdue's having prevailed in its action for breach of the contract of insurance and since that judgment has since been partially reversed, the Court will deny Perdue's motion at this time.

Circuit and need not be repeated in detail here.  Briefly stated, however, this case arose from the settlement of a class action lawsuit (the _Trotter_ litigation) brought against Perdue by current and former employees alleging violations of the Employers Retirement Income Security Act (ERISA), the Fair Labor Standards Act (FLSA), and the wage and hour laws of several states.  The _Trotter_ plaintiffs alleged that Perdue had failed to pay its employees for time spent donning and doffing protective gear and other compensable time in violation of FLSA and the wage and hours laws.  Moreover, the _Trotter_ plaintiffs alleged that Perdue violated ERISA by failing to keep a record of hours worked but not paid for, preventing some employees from becoming eligible for retirement benefits, and by failing to contribute to the Plan two percent of the pay that employees would have earned had they been properly compensated for all time worked.

After receiving notice of the _Trotter_ complaint, Travelers determined that the ERISA-based claims triggered its duty to defend the suit under the Pension Welfare Fund Fiduciary Responsibility Insurance Policy (the Policy) it had issued to Perdue, but reserved its rights to decline to pay any settlement or judgment, and to seek reimbursement for the costs of defending the non-covered wage and hour claims.[2]  Perdue eventually settled with the _Trotter_ plaintiffs for $10,000,000 and limited injunctive relief.  Thereafter, when Travelers refused to indemnify Perdue for the settlement amount, Perdue brought the instant action in the Circuit Court for Wicomico County in Maryland seeking damages of $9,428,841 and a declaratory judgment that

---

[2]It is undisputed that the FLSA and wage and hour claims are not covered under the Policy.

Travelers was obligated to defend and indemnify Perdue.[3]  Travelers removed the action to this Court and cross-claimed for reimbursement of certain defense costs it expended defending Perdue in the Trotter litigation.

Both parties moved for summary judgment and, on August 31, 2004, this Court granted judgment in favor of Perdue, concluding that 1) Perdue was entitled to indemnification for the entire settlement because there was potentiality of coverage for the ERISA claims under the Policy and the non-covered wage and hour claims were reasonably related to the covered ERISA claims and 2) Travelers was not entitled to partial reimbursement for costs incurred defending the non-covered claims.  Travelers appealed.

On May 16, 2006, the United States Court of Appeals for the Fourth Circuit affirmed the judgment of this Court insofar as it held that Travelers was not entitled to partial reimbursement of defense costs, but reversed the grant of summary judgment in favor of Perdue for full indemnification of the settlement amount.  Perdue Farms, Inc. v. Travelers Cas. and Sur. Co. of America, 448 F.3d 252 (4th Cir. 2006).  The Fourth Circuit held that the "reasonably related" rule applied by this Court was applicable only to the duty to defend, not to the duty to indemnify and that the facts in the summary judgment

---

[3]This figure included $6,049,748 for payments to Trotter plaintiffs, $2,977,952 for plaintiffs' attorneys' fees, $98,692 for settlement administration costs (funded from the settlement amount), $248,994 for settlement administration costs (funded by Perdue), and $53,455 to the law firm that assisted in the defense upon request of Plan counsel.  The figure excluded $775,092 paid to plaintiffs that Perdue conceded had no valid ERISA claims and $98,515 in attorneys' fees expended on work related solely to those uncovered claims.

record did not otherwise justify full indemnification given the nature
of the Trotter litigation.  This was so because the Trotter plaintiffs
"were pursuing relief for distinct injuries under statutes that govern
separate aspects of the employer-employee relationship."  Id. at 261.
According to the Fourth Circuit, the covered ERISA claims were "more
limited" than the wage and hour claims and, in large part,
"contingent" on a failure by Perdue to pay wages.  Id. at 262.  The
Fourth Circuit thus remanded the case to this Court for a
determination of what portion of the settlement was paid "in
satisfaction of covered [ERISA] claims."  Id. at 263.

For guidance on remand, the Fourth Circuit explained that, while
it is often preferable for the parties to resolve allocation of
settlement through negotiation, if that is not possible, the "only
proper solution is a rough apportionment of settlement amounts among
covered and non-covered claims."  Id.  The burden would be on the
insured, in this case Perdue, "to prove the amounts attributable to
covered claims."  Id.  The Fourth Circuit noted that the only amount
clearly attributable to covered claims was $907,954.32 paid by Perdue
to Trotter plaintiffs who asserted only ERISA claims.  Finally, while
expressly declining "to pass upon the appropriate guideposts"
governing apportionment, the Court explained that, typically, courts
will consider a "variety of factors short of a full trial of the
original suit" in allocating settlement amounts, including, but not
limited to: 1) "the underlying complaint and settlement agreement," 2)
"the intent of the parties entering into settlement," and 3) "the
relative merits of the underlying claims."  Id. at 264.

On remand, in May of 2006, this Court asked the parties to submit

4

simultaneous memoranda addressing the issue of the procedure the Court should follow in making the allocation determination.  Perdue responded by filing its motion to certify the question of allocation criteria to the Maryland Court of Appeals.  In the alternative, Perdue advocated for a "streamlined procedure" similar to that utilized on a motion for summary judgment whereby this Court (as opposed to a jury) would decide what factors would guide the allocation decision (after briefing), allow the parties to brief allocation under the facts of this case and submit evidence as relevant to these factors and, if necessary, hear oral argument.  Travelers, in its memorandum, argued that the key issue in apportioning the settlement would be the intent of the parties in entering into the settlement of the <u>Trotter</u> litigation and, since intent is a question of fact and a jury trial was demanded in the instant case, allocation must be tried to a jury.

In November of 2006, the parties agreed to submit to non-binding mediation and, in light of that decision, this Court refrained from deciding what allocation criteria would bear on the decision and what procedure would be followed.  In June of 2007, the parties, still in the midst of settlement negotiations, requested that "this Court enter an order formally stating the Court's rulings on the certification issue and the judge versus jury issue."  Paper No. 106.  The Court declined to do so at that time, but asked the parties to advise the Court should a decision on those issues become necessary to "achieve settlement."  Paper No. 107 (July 24, 2007, letter from the Court).  The parties were unable to reach settlement and subsequently filed cross-memoranda on the issue of the appropriate allocation criteria to guide the process.

## II. DISCUSSION

### A. Certification to the Maryland Court of Appeals

As discussed, <u>supra</u>, Perdue initially advocated certification of the issue of allocation criteria to the Maryland Court of Appeals pursuant to Maryland's Uniform Certification of Questions of Law Act. Md. Code Ann., Cts. & Jud. Proc. § 12-603 (2006 Repl. Vol.).  Perdue argued that there was no dispute that Maryland law governed the Policy at issue, that there was no controlling Maryland precedent setting forth the appropriate criteria to govern allocation of a settlement of covered and non-covered claims, and that, absent certification, this Court would be forced to guess as to how Maryland would treat the issue.  Travelers responded that certification would cause unnecessary delay and noted that Perdue could have suggested certification on appeal before the Fourth Circuit, but chose not to do so.

The Court will deny the motion to certify.  The issue of apportionment of settlement has come before many federal district courts and, as will be discussed <u>infra</u>, those courts have looked to the language of the specific insurance policy at issue and to general principles of interpretation of insurance policies under the applicable state law to resolve the issue.  Moreover, as this Court has noted previously, certification would remain an option either party could advocate on appeal of the judgment apportioning the settlement and, at that time, the Maryland Court of Appeals would be able pass upon the appropriate criteria with the benefit of a more fully developed factual record.  <u>See</u> August 30, 2006, Letter Order, Paper No. 89; <u>See also</u> Md. Code Ann., Cts. & Jud. Proc. § 12-606(a)

(certification order shall include "[t]he facts relevant to the question, showing fully the nature of the controversy out of which the question arose").

## B.  The Larger Settlement Rule

In its recent memorandum, Perdue advocates for the application of the so called "larger settlement rule" to the allocation of settlement between the covered and non-covered claims.  <u>See</u> Perdue's Allocation Mem. at 6.  Under this rule, according to Perdue, an insurer is responsible for the entire settlement amount "except to the extent that the settlement amount was increased by the non-covered claims." <u>Id.</u> at 7.  Perdue thus frames the relevant inquiry for purposes of allocation as follows:

> What additional amount did Perdue pay to settle the <u>Trotter</u> class action as a result of the assertion by the <u>Trotter</u> plaintiffs of the non-covered claims for back pay than Perdue would have paid if the <u>Trotter</u> plaintiffs had sought back pay on the basis solely of their ERISA claims?

<u>Id.</u> Perdue indicates that it would submit evidence to show that the settlement was increased only nominally by the presence of the state wage and hour law claims since the same major remedy - back pay - was sought under the covered and non-covered claims.[4]

---

[4] The legal theory under the state wage and hour laws was that Perdue failed to compensate employees for all the time that they worked, thus entitling them to back pay for the uncompensated, but worked, time.  The theory under ERISA was that Perdue failed to compensate employees for all the time that they worked in part based on the specific intent to diminish the Plan contributions (otherwise known as a "benefits-defeating motive"), thus entitling them to back pay as an equitable remedy.  <u>See</u> <u>Trotter v. Perdue Farms</u>, 168 F. Supp. 2d 277 (D. Del. 2001) (denying Perdue's motion for judgment on the pleadings with respect to the state wage and hour claims on the theory that those claims were preempted by ERISA and discussing remedies sought and legal theories presented by the <u>Trotter</u> plaintiffs).

Travelers responds that the Fourth Circuit implicitly rejected the larger settlement rule in its opinion in this case. Further, Travelers argues that this Court need not decide whether Maryland would adopt the larger settlement rule or its rival, the "relative exposure rule," but rather should simply adopt as the allocation criteria the factors suggested by the Fourth Circuit and accept evidence relevant to those factors. Perdue does not necessarily disagree that the factors referenced by the Fourth Circuit should be applied, but asserts that, viewed through the lens of the larger settlement rule, evidence with respect to those factors would be "admissible only to the extent that it were relevant to the incremental portion of the settlement Perdue paid as a result of the non-covered claims." See Perdue Reply at 2 ("admission of evidence on the four factors [suggested by Travelers] . . . is not necessarily antithetical to [Perdue's suggested] allocation method"). Thus, the basic disagreement concerns the scope of the allocation proceeding to follow, with Perdue arguing for a limited proceeding and Travelers for a more expansive proceeding.

Perdue is correct that the larger settlement rule is the dominant analytical framework applied by courts dealing with settlement

---

This Court concluded in its memorandum opinion granting summary judgment to Perdue that Perdue could potentially have been liable for back pay under ERISA given that the Supreme Court had not ruled otherwise and some lower courts had concluded it was an available equitable remedy. In reversing and remanding this case, the Fourth Circuit expressly declined to decide whether back pay could be a remedy for ERISA violations, but emphasized that, in its opinion, it was unlikely that ERISA would be the "primary measure for amounts due and owing the class" where state wage and hour law claims also were asserted. Perdue, 448 F.3d at 260 n.4.

allocation issues.  See 1 Allan D. Windt, Insurance Claims and
Disputes § 6:31 at 767 (4ᵗʰ ed. 2001 & Supp. 2006) (opining that "it
has generally been held" that the larger settlement rule applies where
a settlement is paid "jointly on behalf of insureds and non-insureds,
or is paid on behalf of an insured by reason of covered and non-
covered sources of liability").  A review of the cases applying the
larger settlement rule reveals, however, that it has been applied only
within the unique context of directors and officers' liability
insurance policies (D&O policies).  See Owens Corning v. Nat'l Union
Fire Ins. Co., 257 F.3d 484 (6ᵗʰ Cir. 2001); Caterpillar, Inc. V. Great
Am. Ins. Co., 62 F.3d 955 (7ᵗʰ Cir. 1995); Nordstrom, Inc. v. Chubb &
Son, Inc., 54 F.3d 1424 (9ᵗʰ Cir. 1995); Safeway Stores, Inc. v. Nat'l
Union Fire Ins. Co., 64 F.3d 1282 (9ᵗʰ Cir. 1995); Piper Jaffray Co.
Inc. v. Nat'l Union Fire Ins. Co., 38 F. Supp. 2d 771 (D. Minn. 1999);
Raychem Corp. v. Fed. Ins. Co., 853 F.Supp. 1170 (N.D. Cal. 1994);
Level 3 Commc'ns, Inc. v. Fed. Ins. Co., Civ. No. 96-5346, 1999 WL
675295 (N.D. Ill. Aug. 18, 1999); Fed. Ins. Co. v. Hawaiian Elec.
Indus., Inc., Civ. No. 94-00125, 1996 U.S. Dist. LEXIS 22804 (D. Haw.
Oct. 28, 1996); Ameriwood Indus. Int'l Corp. v. Am. Cas. Co., Civ. No.
92-658, 1994 WL 396089 (W.D. Mich. July 27, 1994), opinion vacated and
withdrawn per stipulation of the parties, 864 F.Supp. 34 (W.D. Mich.
1994).  In these cases, the underlying settled lawsuits were actions
brought under securities laws against both a corporation and its
directors and officers.  Thus, the issue before those courts was how
to allocate settlement amounts between uninsured defendants - the
corporation and its employees - and the insured defendants - the
directors and officers of that corporation.

9

The courts applying the larger settlement rule under these factual scenarios have not, as Perdue implies, adopted a global rule applicable to settlement allocation in general (or even applicable to D&O policies in general), but rather have looked to the language of the insurance policy at issue and determined that the larger settlement rule best effectuated the intentions of the parties under those policies. See, e.g., Nordstrom, Inc., 54 F.3d at 1432-33 ("We do not decide whether any given rule is generally applicable to all settlement agreements under D & O insurance policies, [but r]ather we consider the particular policy in question to determine which rule best effectuates the reasonable expectations and intentions of the parties under the insurance contract."); Caterpillar, Inc., 62 F.3d at 961 (same); Level 3, 1999 WL 675295, at *5 (same).  The policy language at issue in the D&O cases varied slightly, but generally covered "all Loss which the Directors or Officers shall be legally obligated to pay." Caterpillar, Inc., 62 F.3d at 962; See also Piper Jaffray Co., 38 F. Supp. at 776 (policy covering "Loss arising from any claim or claims which are first made against the Directors or Officers . . . for any alleged Wrongful Act").  Courts considering the issue concluded that, in the context of actions alleging joint and several liability between insured and uninsured defendants, this language implied "complete indemnity for claims regardless of who else might be at fault for similar actions." Caterpillar, Inc., 62 F.3d at 962.  Thus, in applying the rule, the courts were concerned with whether there was "corporate liability that [was] both independent of and not duplicated by liability against the directors and officers." Nordstrom, 54 F.3d at 1433.  See also Piper Jaffray Co., 38 F. Supp.

2d at 775 (noting, in support of application of the larger settlement rule, that the underlying complaint alleged joint and several liability between the insured and uninsured defendants based on the same wrongful conduct).

In contrast to the D&O cases, the underlying litigation here involved <u>claims</u> falling within and without the Policy's coverage: three covered counts under ERISA and six non-covered counts under the FLSA and state wage and hours laws.  The Policy provided in pertinent part that Travelers would "pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as Damages <u>on account of any claim made against the Insured for any Wrongful Act</u> . . . ."  Policy at § 1 (emphasis added).  A "Wrongful Act" is defined as "a breach of fiduciary duty by the Insured in the discharge of duties as respects the Trust or Employee Benefit Plan . . . ."  <u>Id.</u> at § IV.(1).  This language is very similar to that employed in the D&O policies discussed, but to a very different effect.  It does not follow from this language that it was within the reasonable expectations of the parties that settlement of claims falling outside of the definition of a "Wrongful Act" would lead to liability for Travelers.  This is not an issue addressed by any of the cases cited by Perdue, as all involved allocation between insured and uninsured defendants for covered claims.

Furthermore, Perdue's argument that Maryland's adoption of the "reasonably related" rule would support the conclusion that Maryland would adopt the larger settlement rule is not well taken for two reasons.  First, as noted above, application of the larger settlement rule follows from the Policy language, not as a general rule

11

applicable to all settlement allocation proceedings.  Second, as the

Fourth Circuit made clear, the "reasonably related" rule is applicable

to the duty to defend in the context of D&O policies, and has never

been extended by Maryland to the duty to indemnify or to other types

of insurance policies.  <u>See</u> <u>Perdue</u>, 448 F.3d at 260 (opining that it

is not clear how the reasonably related rule would "map onto the

dissimilar considerations involved in a mixed-action settlement").

For the above reasons, the Court concludes that larger settlement rule

is inappropriate under the facts of this case.

### C. Allocation Criteria

The alternative approach, advocated by Travelers, is for the

Court to select factors or criteria bearing on a determination of an

apportionment of the settlement, allow the parties to submit evidence

relevant to that criteria, and, with the burden on Purdue, determine

what portion of the settlement was paid in compromise of the covered

ERISA claims.[5]  This approach finds support in cases dealing with

allocation between covered and non-covered claims.  In <u>American Home</u>

<u>Assurance Co. v. Libbey-Owens-Ford Co.</u>, 786 F.2d 22 (1st Cir. 1986),

---

[5]This approach is similar to the "relative exposure" rule
adopted in the D&O context by some courts instead of the larger
settlement rule.  Under that rule, a settlement is allocated "to
reflect the relative liabilities of the insured and non-insured
defendants or the relative values of the covered and non-covered
sources of liability." Windt, <u>supra</u>, § 6:31.  At least one court
utilizing this approach has placed the burden on the insurer to
demonstrate what portions of a settlement under a D&O policy
should be allocated to the uninsured corporation.  <u>See</u> <u>Pepsico,
Inc. v. Continental Casualty Co.</u>, 640 F.Supp. 656, 662 (S.D.N.Y.
1986).  As discussed earlier, in the instant case, the Fourth
Circuit explicitly placed the burden on the insured (Perdue) to
prove what portion of the settlement is covered.

for example, the First Circuit considered the allocation of a $26 million settlement entered into in compromise of claims against Libbey-Owens-Ford (LOF) for direct and consequential damages arising from defective windows installed in a commercial building.  LOF had three insurance policies, one of which was an excess commercial general liability policy (CGL) issued by American Home.  The district court found that, of the claims asserted against LOF in the underlying litigation, the excess CGL policy covered only those claims related to loss of use of the building.  The district court then set out to determine what portion of LOF's $26 million settlement was attributable to the loss of use claims.  It decided that apportionment should be resolved by comparing the total damages asserted under all of the counts in the complaint to the damages asserted under the covered count and attributing that proportional responsibility to American Home.[6]

On appeal, the First Circuit rejected this approach, reasoning that the court could not make an apportionment determination based purely on the allegations in the underlying complaint, without accepting evidence from the parties as to how the settlement had been intended to be allocated.  Id. at 31.  For instance, the court noted that LOF may have thought one claim would be more easily proven at trial, and thus, paid more in settlement of that claim than a seemingly weaker claim.  The First Circuit concluded that:

---

[6]The total claim against LOF was for $89 million and of that, $25.9 million in damages was for loss of use.  Thus, the district court concluded that the loss of use claim represented 29% of LOF's damages.  Accordingly, of the $26 million settlement, only slightly more than $7 million was attributable to the covered loss of use claim.

despite the problems that are inherent in any post facto
analysis of settlement claims, if the district court is to
make an allocation of the settlement amount, <u>it should
accept whatever evidence is available regarding the intent
behind the settlement decision</u>.  If the court finds that
there is a material issue of fact as to how the settlement
amount was allocated, that finding should be made at trial
and not on summary judgment.

<u>Id.</u> (emphasis added).  <u>See also</u> <u>Enserch Corp. v. Shand Morahan & Co.,</u>

<u>Inc.</u>, 952 F.2d 1485, 1494 (5th Cir. 1992)(between covered and uncovered

claims, the settlement must be apportioned based on a consideration of

factors including the complaint, the settlement agreement, and facts

that would have been the subject of the underlying case); <u>Cooper</u>

<u>Labs., Inc. v. Int'l Surplus Lines Ins. Co.</u>, 802 F.2d 667, (3rd Cir.

1986)(where pharmaceutical company's insurance policy covered products

liability for a hospital's use of the product, but not malpractice by

the hospital, district court should make factual determination as to

the bases of hospital's potential liability, and if there were both

covered and non-covered sources of liability, an equitable

apportionment would be required); <u>Employers Mut. Liab. Ins. Co. of</u>

<u>Wis. v. Hendrix</u>, 199 F.2d 53, (4th Cir. 1952)(stating that "[i]t is

manifest that the sum of $20,000 paid in settlement of the

counterclaims cannot be charged in its entirety against the Insurance

Company because the payment covered two causes of action, assault and

battery and slander, without apportionment between them, and only the

first cause of action was covered by the policy").

The Court concludes that consideration of the factors set forth

in Travelers' memorandum – the <u>Trotter</u> complaint and settlement

agreement, the motive and intent of the <u>Trotter</u> plaintiffs and Perdue

in entering into the settlement, and the relative merits of the

underlying claims – would adequately guide the fact finder in

14

performing the "rough apportionment" required.  With respect to the last factor, the Court emphasizes that the _actual_ merits of the underlying claims are not relevant, rather, the "only question should be how the parties to the settlement viewed the relative merits of the plaintiff[s'] claims at the time of the settlement[.]"  Windt, _supra_, § 6:31.  By limiting the evidence to facts relevant to the decision to settle, the Court intends to avoid a full-blown trial of the underlying litigation.

**D.  Allocation Procedure**

The last issue before this Court is whether the eventual allocation proceeding should be tried to a jury or to the Court. Travelers has argued that this matter must be tried to a jury because it involves questions of fact - _i.e._, the intentions of the parties to the underlying _Trotter_ settlement.  _See_ Paper No. 88 (Def's Mem. Regarding Further Proceedings in this Case).  Perdue responds that allocation "involves a rough measure of justice" and is "designed to produce equitable results," supporting its argument that this is a matter for the Court to decide.  Paper No. 87 (Perdue's Mem. in support of Mot. to Certify).

It is undisputed that Perdue demanded a jury trial when it brought the instant action, _see_ Compl. at 12, and that this demand cannot be withdrawn absent the consent of Travelers.  _See_ Fed. R. Civ. P. 38(d).  Travelers has not so consented.  Thus, the issue is whether allocation of an insurance settlement between covered and non-covered claims is triable of right to a jury.

Where a cause of action is in federal court on the basis of diversity jurisdiction, the determination of a right to a jury trial

15

is a matter of federal law.  <u>Simler v. Conner</u>, 372 U.S. 221, 222
(1963).  "Whether the right to trial by jury attaches under the first
clause of the Seventh Amendment does not depend on whether a "fact" is
involved but on whether a "sui[t] at common law" is involved.
<u>Hartford Fire Ins. Co. v. First Nat'l Bank of Atmore</u>, 198 F. Supp. 2d
1308, 1310 (S.D. Ala. 2002).  Thus, the "critical question in
determining the right to a jury trial becomes whether at common law, a
particular issue would have been tried to a court of law or a court of
equity."  <u>Township of Haddon v. Royal Ins. Co. of Am.</u>, 929 F.Supp.
774, 777 (D.N.J. 1996).

    Perdue suggests, by reference to numerous cases dealing with
allocation issues[7] and the language employed by the Fourth Circuit in
remanding this action[8], that the apportionment decision is equitable in
nature.  None of the cases cited are on point, however, as it is
unclear from the cases whether a jury trial was demanded by either
party in those cases and, in any event, the right to a jury trial was
not a contested issue before those courts.  Travelers has cited
several cases suggesting that allocation of settlement is triable to a

---

    [7]<u>See, e.g., Gen. Accident Ins. Co. of Am. v. N.J. Dep't of
Envtl. Prot.</u>, 672 A.2d 1154, 1162 (N.J. 1996) (court should have
"broad discretion" to effect a "fair allocation" of costs between
defense and indemnity provisions of an insurance policy to
achieve a "rough measure of justice"); <u>Endicott Johnson Corp. v.
Liberty Mut. Ins. Co.</u>, 928 F.Supp. 176, 184 (N.D.N.Y. 1996)
(same).

    [8]The Fourth Circuit called for a "rough apportionment of
settlement amounts among covered and non-covered claims"; stated
that this Court must decide "how apportionment . . . should
proceed"; and remanded the case for further proceedings
consistent with its decision.  <u>Perdue</u>, 448 F.3d at 263-64.  The
decision did not pass upon the issue of the right to a jury
trial.

jury.

Looking to the nature of this action, the Court is persuaded that Travelers is entitled to a jury trial.  Perdue's complaint seeks monetary damages of $10.4 million for Travelers' alleged breach of the Policy.  Compl. ¶¶ 40-42.  Perdue also seeks a declaratory judgment that Travelers is obligated both to defend and indemnify Perdue with respect to the Trotter litigation.  Compl. ¶¶ 43-45.  Both the breach of contract and declaratory judgment counts sound in law as each is a contract action on the insurance policy and Perdue seeks a legal remedy - money damages.  See 16 Couch on Insurance 3d, § 232:118 (Insurance Contract Rights as Primarily Legal); see also generally Baylis v. Travelers' Ins. Co., 113 U.S. 316 (1885)(right to jury trial in action to recover on insurance policy); see also Couch on Insurance at § 232:49 (noting that a declaratory judgment action may be legal or equitable depending on the nature of the suit).  The apportionment of settlement amounts will no doubt be difficult and provide a rough measure of justice, but no more so than many other questions presented to juries.  Cf. 57B Am. Jur. 2d Negligence § 1072 (apportionment of fault in comparative negligence jurisdictions is within the province of the jury).

IV.   **CONCLUSION**

For all of the foregoing reasons, Perdue's motion to certify a question of law to the Maryland Court of Appeals will be denied and

the case will be set in for a jury trial to determine apportionment of
the settlement amount based on the factors enunciated herein.  A
separate order consistent with this memorandum will issue.

                              _____/s/_____
                              William M. Nickerson
                              Senior United States District Judge

Dated: December 13, 2007.